Order Entered.

*[signature]*
Patrick M. Flatley
United States Bankruptcy Judge

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| TARA RETAIL GROUP, INC., | ) | |
| *dba Tara Hotel Group, LLC*, | ) | Case No. 17-bk-57 |
| | ) | |
| Debtor. | ) | Chapter 11 |
| | ) | |

## MEMORANDUM OPINION

On January 3, 2018, the court entered an order approving the resolution of a disputed claim filed in this case by Dollar Tree Stores, Inc ("Dollar Tree"). The court delivered its findings and legal conclusions in that regard during a telephonic status conference on December 19, 2017. On January 17, 2018, COMM 2013 CCRE12 Crossings Mall Road, LLC ("Comm2013"), filed a notice of appeal of the court's order. In order to create a more robust record for the District Court, the court issues this written memorandum opinion restating its justification for approving the Debtor's resolution of its objection to Dollar Tree's proof of claim.

### I. BACKGROUND

The background of this case, and the Debtor's relationship with Comm 2013, is long and tortured. Relevant, however, to the extant appeal are the following facts. The Debtor is a single-purpose entity who owns and operates a real estate development commonly known as, among other things, the Elkview Crossings Shopping Mall in Elkview, West Virginia. Dollar Tree is one of many tenants at the retail center; others include Kmart Corporation, Kroger Limited Partnership I, and The Elswick Company, LLC, *dba* Anytime Fitness.

Prepetition, each of the above-identified tenants leased space from the Debtor at the Crossings Mall. In June 2016, a catastrophic flood washed away the sole commercially reasonable access to the Crossing Mall. The tenants at the Crossings Mall were therefore unable to operate for a significant time. Despite that, they continued to pay rent for some time. Specifically, Dollar Tree asserts in its proof of claim filed in this case that it paid $26,969.28 from June 2016 through

1

November 2016. Based upon that amount, combined with other damage claims against the Debtor, Dollar Tree filed a proof of claim in this case totaling $276,969.28.

On June 29, 2017, the Debtor filed an omnibus objection to the proofs of claim filed by Dollar Tree, Kmart, Kroger, The Elswick Co., and Bob Evans Restaurants, LLC. By stipulations entered August 1 and September 8, 2017, the Debtor and Dollar Tree extended the deadline by which Dollar Tree had to respond to the Debtor's objection. In the interim, the Debtor resolved its objection to the proof of claim filed by Bob Evans. Among other things, the Debtor recognized Bob Evans's proof of claim, which it filed in an amount of *at least* $17,500, in the amount of $217,500, including $200,000 as the estimated expense to repair the condition of the property leased by Bob Evans. Notably, however, Bob Evans agreed to receive a total pro rata distribution of not more than $1,000 under the Debtor's plan. On August 16, 2017, the court signed the agreed order resolving the Debtor's objection to Bob Evans's proof of claim. No appeal followed. Later, the Debtor and Dollar Tree resolved the claim dispute between them by stipulation filed October 31, 2017. Per the stipulation, as is relevant here, the Debtor agreed to recognize the full amount of Dollar Tree's proof of claim, which was filed in the amount of $276,969.28, and Dollar Tree agreed to accept a reduced payment of $26,969.28 on its proof of claim. On the night before the hearing to consider the stipulation, which the court held on November 14, 2017, Comm 2013 filed its written objection to the stipulation and proposed agreed order.

During the hearing, Comm 2013 noted its objections to the proposed resolution, including that the Debtor should have sought approval under Federal Rule of Bankruptcy Procedure ("Rule") 9019, that the proposed resolution improperly included the assumption of a lease, and that the voting rights of a claimant must be tied to the allowed amount of its claim. On the record, the court found that the creditor body had sufficient notice of the proposed resolution and effectively transmogrified the proceeding into one under Rule 9019. Ultimately, the court concluded that the proposed resolution was the product of the Debtor's sound business judgment. A lingering issue, however, was whether the court should countenance that aspect of the settlement that allowed Dollar Tree to vote the full amount of its proof of claim in conjunction with the plan process when the distribution to Dollar Tree on its proof of claim is significantly less. On November 20, 2017, the court entered an order reflecting its findings but reserving a decision upon the issue regarding the voting rights of Dollar Tree. Additional briefing by the parties on the issue was ordered.

## II. ANALYSIS

Comm 2013 asserts two principal reasons why the court should not approve the Debtor's proposed resolution of its objection to the proof of claim filed by Dollar Tree: first, because Dollar Tree can vote only the amount of its allowed claim, which Comm 2013 asserts is $26,969.28 under the propose resolution; and second, because the proposed resolution constitutes a solicitation in violation § 1125(b) of the Bankruptcy Code.  In support of its first contention, Comm 2013 relies upon *In re SK Foods, L.P.*, Case No. 09-29162, 2011 WL 10715382 (Bankr. E.D. Cal. Jan. 27, 2011).  According to Comm 2013, *SK Foods* stands for the proposition that a creditor's voting rights in Chapter 11 must be identical to that creditor's distribution rights.  Specifically, Comm 2013 cites the following from *SK Foods*:

> At the initial hearing, the court expressed its concern that allowing the claims at one amount for distribution purposes but at an amount more than six times higher for voting purposes appeared designed to manipulate the voting process; that is, it appeared to give these claimants voting power disproportionate to their true economic interests in the case and unfairly greater than the voting power of other unsecured creditors.

*Id.* at *1, n.3.  According to Comm 2013, "[t]he *SK Foods* Court refused to approve the settlement until the parties modified their agreement to make voting rights <u>identical</u> to distribution rights."

In support of its second argument, Comm 2013 asserts that because the court has not yet approved a disclosure statement, the Debtor's proposed resolution of its dispute with Dollar Tree constitutes a solicitation barred by § 1125(b).  Specifically, Comm 2013 contends that the following language binds Dollar Tree to accept the Debtor's anticipated proposed plan of reorganization:  "The Debtor agrees to assume the Lease pursuant to a plan of reorganization to be filed with this Court and Dollar Tree agrees to vote in support of the Debtor's plan of reorganization so long as it incorporates such assumption."  Comm 2013 believes that the inclusion of such language in the proposed resolution of the claim objection constitutes a binding agreement for Dollar Tree to vote in favor of the Debtor's anticipated plan before there has been an approved disclosure statement.

The Debtor disagrees on both points.  First, the Debtor contends that *SK Foods* is not controlling, is of little persuasive value, and ultimately does not stand for the proposition advanced by Comm 2013.  Specifically, the Debtor asserts that the claim allowance process is largely within the court's discretion, and that Rule 3018(a) contemplates a result where the amount of a claim

3

allowed for voting may differ from the amount of the filed proof of claim. Regarding *SK Foods*, the Debtor notes that the excerpt cited by Comm 2013 is from a footnote and that the court does not find in the opinion itself that a settlement can only occur with an agreement that voting rights are identical to distribution rights. Moreover, the Debtor distinguishes *SK Foods* from this case and notes that none of the creditors similarly situated with Dollar Tree object to the proposed resolution.

Second, the Debtor contends that its agreement with Dollar Tree does not constitute an unauthorized solicitation under § 1125(b). In support of its position in that regard, the Debtor cites *In re Heritage Organization, L.L.C.*, 376 B.R. 783 (Bankr. N.D. Tex. 2007). Specifically, the Debtor asserts that courts have interpreted "solicitation" under § 1125(b) narrowly to not limit negotiations with creditors. For example, the court in *Heritage Organization* found a "written memorialization of the negotiations towards settlement of the legal disputes that have prevented confirmation to date . . . is not a solicitation of a vote." *Id.* at 792. Finally, the Debtor asserts that certain cases relied upon by Comm 2013 are distinguishable because its stipulation with Dollar Tree does not prevent Dollar Tree from voting against the Debtor's plan.

Having considered the parties' respective arguments on the issue, the court finds it appropriate to overrule Comm 2013's objection and approve the Debtor's stipulation with Dollar Tree. In that regard, Dollar Tree filed its proof of claim for $276,969.28. Absent the Debtor's objection, or an objection from another interested party, Dollar Tree's proof of claim in that amount would have stood as filed, and Dollar Tree would have been entitled to vote that amount in the plan process. The Debtor objected, however, and it and Dollar Tree spent significant effort—spanning several months—to resolve its objection rather than spending time and estate resources litigating. Ultimately, the two parties came to a resolution that the court has already found to be the product of the Debtor's sound business judgment. As a result, Dollar Tree agreed to accept payment of only $26,969.28 on its claim despite the claim being allowed for $276,969.28.

The court does not believe this to be an inappropriate resolution of the claim objection, because Dollar Tree is not receiving any benefit that it would not otherwise possess in the absence of an objection. In the absence of the objection, Dollar Tree would have voted the full amount of its allowed claim and received whatever distribution a plan proponent proposed by a plan; here, the amount in the Debtor's plan is set at $26,969.28. Notably, the Debtor and Dollar Tree may have created confusion by using "allowed" twice in their stipulation—once referring to the claim

4

for voting purposes and then again for distribution purposes. The court, however, noted on the record during its disposition of the matter, that it viewed the stipulation as allowing Dollar Tree's claim in the full amount despite Dollar Tree's agreement to accept much less than the amount of its allowed claim. The court views the proposed resolution as the Debtor's recognition of the proof of claim but Dollar Tree's agreement to accept merely a percentage payment on its allowed claim. In fact, unsecured creditors often receive a fraction of their claims in bankruptcy. Moreover, the court's principal concern in this context is fairness to other similarly situated creditors. Here, Comm 2013 is not similarly situated to Dollar Tree or the other tenant-creditors. Instead, its claim is secured, at least in part, by the value of the Debtor's real property and anticipated stream of rents. In that regard, the court notes that although it has not yet determined the value of the collateral securing Comm 2013's claim, it could be that Comm 2013 is fully secured or even oversecured. In that context, that courts finds it unlikely that Comm 2013 could establish sufficient standing to object to the Debtor's resolution of unsecured proofs of claim. In any event, the court sees no prejudice to Comm 2013 or any other creditor in the case. In fact, Bob Evans and at least one other creditor similarly situated to Dollar Tree received the same or similar treatment.

Additionally, rather than objecting, the Debtor could have let the claim stand and negotiated support for its plan post-disclosure such that Dollar Tree could have accepted the same treatment that is proposed by the extant settlement. So despite being in the claim objection process, the court perceives the settlement to be reasonable because it accomplishes the same result that the Debtor and Dollar Tree could have accomplished in the absence of a claim objection and does not unduly prejudice other creditors.

Regarding whether the settlement constitutes an impermissible lock-up agreement, the court is persuaded by the Debtor's supplemental response that this settlement does not constitute such an agreement. In other words, the court does not view the settlement as constituting an impermissible solicitation under §1125(b). Specifically, the court finds that the weight of authority as reflected in *Heritage Organization* supports a finding that the Debtor's negotiated resolution of its objection to Dollar Tree's proof of claim is inoffensive. As the court there noted,

> The majority of courts to have considered the contours of the term ["solicitation"] have defined it narrowly. *Zenter GBV Fund IV v. Vesper,* 19 Fed.Appx. 238, 247 (6th Cir. 2001) (unpublished disposition) (the terms "solicit" and "solicitation" must "be interpreted very narrowly to refer only to a specific request for an official vote either accepting or rejecting a plan . . . [t]he terms do not encompass discussions, exchanges of information, negotiations, or tentative arrangements . . .

5

."); *Century Glove, Inc. v. First American Bank of New York,* 860 F.2d 94, 101–02 (3rd Cir.1988) ("the term 'solicitation' must be read narrowly.  A broad reading of § 1125 can seriously inhibit free creditor negotiations . . . we find no principled, predictable difference between negotiation and solicitation of future acceptances. We therefore reject any definition of solicitation which might cause creditors to limit their negotiations."); *In re Kellogg Square P'ship,* 160 B.R. 336 (Bankr.D. Minn.1993).

*In re Heritage Org.*, 376 B.R. 783, 791-92.  Here, the court finds the contested provision of the settlement—that which allegedly commits Dollar Tree to accept the plan—to be only tangential to the core of the proposed settlement.  For instance, the settlement of the claim objection could stand on its own in the absence of such an agreement.  In any event, Dollar Tree's anticipated support for the plan is based and conditioned upon the Debtor conforming the terms of its plan regarding Dollar Tree to the terms of the settlement agreement, and thus is not "locked up" by virtue of the proposed settlement itself.  Finally, as the Debtor notes in its support for the proposed settlement, Dollar Tree is a sophisticated party represented by counsel, and it made an informed decision regarding its claim and its potential support for the Debtor's proposed plan.  The court therefore sees no basis to disapprove the stipulation between the Debtor and Dollar Tree.

### III. CONCLUSION

For the reasons stated herein, and on the record previously, the court entered its order dated January 3, 2018.