Order Entered.

Patrick M. Flatley
United States Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| In re: ) | |
| ) | |
| TARA RETAIL GROUP, INC., ) | |
| *dba Tara Hotel Group, LLC*, ) | Case No. 17-bk-57 |
| ) | |
| Debtor. ) | Chapter 11 |
| ) | |

## MEMORANDUM OPINION

On February 14, 2018, the court entered an order approving the resolution of a disputed claim filed in this case by The Elswick Co., LLC d/b/a Anytime Fitness ("Elswick"). On February 26, 2018, COMM 2013 CCRE12 Crossings Mall Road, LLC ("Comm2013"), filed a notice of appeal of the court's order. In order to create a more robust record for the District Court, the court issues this written memorandum opinion restating its justification for approving the Debtor's resolution of its objection to Elswick's proof of claim.

### I.  BACKGROUND

On January 18, 2018, the court entered a memorandum opinion approving the Debtor's resolution of its objection to a proof of claim filed by Dollar Tree Stores, Inc ("Dollar Tree"). As the court noted in that memorandum opinion, which the court entered after Comm2013 appealed the court's disposition of the matter, the background of this case and the Debtor's relationship with Comm 2013 is long and tortured. Aside from extending deadlines relevant to the filing of pleadings in the case, the Debtor and Comm2013 have abandoned any spirit of cooperation to the extent it ever existed.

Relevant to the extant appeal are the following facts. The Debtor is a single-purpose entity who owns and operates a real estate development commonly known as, among other things, the Elkview Crossings Shopping Mall in Elkview, West Virginia. Elswick is one of many tenants at the retail center; others include Kmart Corporation, Kroger Limited Partnership I, and Dollar Tree.

Prepetition, each of the above-identified tenants leased space from the Debtor at the Crossings Mall. In June 2016, a catastrophic flood washed away the sole commercially reasonable access to the Crossing Mall. The tenants at the Crossings Mall were therefore unable to operate for a significant time. Despite that, they continued to pay rent for some time. Additionally, tenants experienced other damages flowing from the historic flood. On April 5, 2017, Elswick filed its proof of claim asserting an unsecured claim for $1,000,000. It subsequently amended its proof of claim "on behalf of itself and all putative class members . . ." and claimed an unsecured claim in an amount "[t]o be determined."

On June 29, 2017, the Debtor filed an omnibus objection to the proofs of claim filed by Elswick, Kmart, Kroger, Dollar Tree, and Bob Evans Restaurants, LLC. By stipulations entered August 3, 2017, the Debtor and Elswick extended the deadline by which Elswick had to respond to the Debtor's objection.[1] In the interim, the Debtor resolved its objection to the proof of claim filed by Bob Evans. Among other things, the Debtor recognized Bob Evans's proof of claim, which it filed in an amount of *at least* $17,500, in the amount of $217,500, including $200,000 as the estimated expense to repair the condition of the property leased by Bob Evans. Notably, however, Bob Evans agreed to receive a total pro rata distribution of not more than $1,000 under the Debtor's plan. On August 16, 2017, the court signed the agreed order resolving the Debtor's objection to Bob Evans's proof of claim. No appeal followed.

On September 29, 2017, Elswick filed its written response to the Debtor's claim objection. On October 31, 2017, however, the court entered an order suspending consideration of the Debtor's objection based upon the court's referral of the case to mediation, which ultimately failed. On November 15, 2017, the Debtor filed a reply to Elswick's response to its objection. Ultimately, the Debtor and Elswick resolved the claim dispute between them based upon terms recited in the Debtor's motion to compromise filed December 18, 2017. According to the motion, as is relevant here, the Debtor agreed to recognize the full amount of Elswick's proof of claim in the amount of $835,888, which is based at least in part on an expert report provided to the Debtor by Elswick, and Elswick agreed to accept $21,431.65 under the Debtor's plan of reorganization, if the court confirms it, in full satisfaction of that claim. Notably, however, "Elswick may exercise a

---

[1] Notably, on August 3, 2017, the court entered an order sustaining the Debtor's objection to Elswick's proof of claim. The court subsequently set aside that order based upon the Debtor's motion in that regard and a finding of good cause.

contingent right of recoupment against rent due under the Lease to the extent of $21,431.65 in anticipation of confirmation of [the Debtor's] plan . . ." upon the court approving the compromise by a final, non-appealable order. Comm2013 opposes the proposed compromise based upon the same two bases it opposed the Debtor's compromise with Dollar Tree and an additional basis: that the compromise constitutes an impermissible use of its cash collateral.

On February 13, 2018, the court convened a telephonic hearing to consider, among other things, the Debtor's proposed compromise with Elswick and Comm2013's objection thereto. At the conclusion of the hearing, the court rejected the arguments made by Comm2013 that mirrored those it made in opposition of the Debtor's compromise with Dollar Tree. As the court noted, it previously disposed of those arguments in its memorandum opinion approving the Debtor's compromise with Dollar Tree, and it did not see any good cause to revisit its decision in that regard.[2] The court therefore incorporates by reference its analysis regarding those two issues and focuses here solely on the new argument advanced by Comm2013 in opposition to the Debtor's proposed compromise with Elswick.

## II. ANALYSIS

Comm 2013 asserts that the Debtor's proposed compromise with Elswick constitutes the unauthorized use of its cash collateral. At bottom, Comm2013 asserts that it has a security interest in rents not yet owed and unpaid such that the Debtor recognizing Elswick's right to recoupment violates its rights in the prospective cash collateral. The Debtor, on the contrary, contends that Comm2013's rights in its collateral can only be as great as the Debtor's interest in that property.

Congress defined "cash collateral" in the Bankruptcy Code as "cash, negotiable instruments . . . deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest . . . ." 11 U.S.C. § 363(a). Under the Uniform Commercial Code ("U.C.C.") as adopted in New York, a security interest in rents, for instance, attaches only when "the debtor has rights in the collateral or the power to transfer rights in the collateral . . . ." N.Y. U.C.C. § 9-203(a) and (b)(2).[3] Notably, recognized in the official comments

---

[2] To be clear, Comm2013's appeal of the court's decision in that regard is pending, but the court likewise does not see that as an impediment to resolving the Debtor's proposed resolution with Elswick because Comm2013 did not obtain a stay of the court's order in that regard.

[3] The court cites to New York law based upon the Debtor's assertion previously that New York law governs its relationship with Comm2013.

3

to § 9-203, the "security interest attaches only to whatever rights a debtor may have, broad or limited as those rights may be." N.Y. U.C.C. § 9-203 cmt. 6.

In the context of this case, involving the rights of a landlord-debtor and tenant-creditor, a claim for recoupment by the tenant-creditor is superior to even the bankruptcy estate's interest in the prospective rent. *See Megafood Stores, Inc. v. Flagstaff Realty Assocs. (In re Flagstaff Realty Assocs.)*, 60 F.3d 1031, 1036 (3rd Cir. 1995) (quoting *In re Holford*, 896 F.2d 176, 179 (5th Cir. 1990)) (internal quotation omitted) ("The trustee of a bankruptcy estate takes the property subject to rights of recoupment.").

Having considered the parties' respective arguments on the issue, the court agrees with the Debtor. As the court noted in its order granting the Debtor's compromise with Elswick, and in light of the authority relied upon herein, Comm2013's security interest only encumbers the Debtor's property interest in rents received by the Debtor. To the extent the Debtor anticipates receiving rent in the future, from Elswick or a substitute tenant, Comm2013's security interest will likewise encumber that rent once paid to the Debtor; the collateral is limited to only that which the Debtor receives and possesses. The Debtor's assignment of rents does not, for instance, give Comm2013 standing to bring a civil action against Elswick or another tenant in the event of a breached lease. Rather, Comm2013 simply possesses a security interest in the collateral identified in its agreement with the Debtor, which includes rents received from tenants. To the extent prospective rent is subject to Elswick's right of recoupment, that right is superior to Comm2013's collateral interest such that the Debtor's proposed settlement with Elswick does not constitute the unauthorized use of Comm2013's cash collateral.

### III. CONCLUSION

For the reasons stated herein, and on the record previously, the court entered its order dated February 14, 2018.