Patrick M. Flatley
United States Bankruptcy Judge

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| TARA RETAIL GROUP, INC., | ) | |
| *dba Tara Hotel Group, LLC*, | ) | Case No. 17-bk-57 |
| | ) | |
| Debtor. | ) | Chapter 11 |
| _____ | ) | |

### MEMORANDUM OPINION

The Debtor and its counsel, Kay Casto & Chaney PLLC ("Kay Casto"), seek approval of Kay Casto's first application for compensation for fees and expenses incurred from January 24 to October 31, 2017 (the "Fee Application"). Because the Debtor lacks any unencumbered cash to pay its attorney's fees and expenses, it also seeks payment by way of surcharging the collateral of Comm 2013 CCRE Crossings Mall Road, LLC ("Comm 2013"), under § 506(c) of the Bankruptcy Code. Comm 2013 opposes both requests on several bases.

For the reasons stated herein, the court will approve Kay Casto's first interim application.[1] The court, however, will deny the Debtor's Motion to Surcharge.

### I. BACKGROUND

The Debtor is a single-purpose entity who owns and operates a real estate development known as the Elkview Crossings Shopping Mall in Elkview, West Virginia. In September 2013, UBS Real Estate Securities, Inc. ("UBS"), loaned $13,650,000 to the Debtor and secured the Debtor's repayment by taking security interests in the Debtor's property, including rents. UBS subsequently assigned the loan and security interests to a different entity, which assigned the loan and security interests to Comm 2013. In June 2016, a flood washed away the sole point of public access to the Crossings Mall. As a result, the property was inaccessible and inoperable for over a

---

[1] Notably, all interim fee awards are reviewable and subject to final approval by the court. *See* 11 U.S.C. § 330(a)(5); *In re Comput. Learning Ctrs., Inc.*, 407 F.3d 656, 662 (4th Cir. 2005).

year beginning in June 2016.  The Debtor retained Kay Casto as counsel and filed its Chapter 11 bankruptcy petition on January 24, 2017.  Postpetition, Kay Casto rendered a wide variety of legal services, including assisting the Debtor in successfully defending against a motion to dismiss, obtaining court approval for postpetition financing to rebuild access to the shopping center, objecting to several proofs of claims, and formulating multiple proposed disclosure statements and plans of reorganization, among other things.

On December 18, 2017, Kay Casto filed its Fee Application requesting $308,655.50 in attorney's fees and $3,716.07 in expenses.  Because it lacks any unencumbered assets, the Debtor then filed a motion to surcharge Comm 2013's collateral for its attorney's fees and expenses.  On February 13, 2018, the court held a telephonic hearing regarding the motions and ordered supplemental briefing, which the parties timely filed.  The matters are now ripe for disposition.

## II. ANALYSIS

The Debtor and Kay Casto seek approval of the Fee Application and Motion to Surcharge. They assert that the fees in this case are reasonable under §§ 330 and 331 of the Bankruptcy Code and that no party, including the United States Trustee, has objected to the reasonableness of the fees.  Moreover, they assert that the court should surcharge Comm 2013's collateral under § 506(c) because their attorney's fees and expenses were necessary to build the bridge and restore access to the property, which allegedly increased the value of the property by $6,400,000.[2]

Comm 2013 opposes the Fee Application and Motion to Surcharge for several reasons.  It argues that the court should deny the Fee Application because the Debtor lacks unencumbered cash to pay the fees.  All of the Debtor's cash is encumbered by Comm 2013's security interest, and Comm 2013 opposes the use of its collateral to pay the requested fees.  Furthermore, Comm 2013 argues that the Motion to Surcharge should be denied because the Debtor's professional fees were not incurred primarily for Comm 2013's benefit, Comm 2013 received no direct or

---

[2]    Kay Casto also asserts that it has also protected Comm 2013's position by pursuing an administrative expense claim on behalf of the Debtor in the Chapter 11 case of Emerald Grande, LLC (Case No. 17-bk-21), for the reasonable value of services rendered by the Debtor in building the bridge and the benefits that flowed to Emerald Grande as a result.  That claim is presently unresolved and awaiting further development.  Thus it is unclear whether its resolution with render any benefit to the Debtor's estate or Comm 2013.

quantifiable benefit from Kay Casto's representation of the Debtor, and the expenditures were not reasonable or necessary to preserve Comm 2013's collateral.[3]

Based upon the context surrounding these matters—specifically, that Comm 2013 objects to the Fee Application almost exclusively because of the potential surcharge of its collateral—the court will first determine if surcharge is appropriate. If surcharge is not appropriate, the reasonableness of Kay Casto's fees and expenses is largely unopposed.[4]

Generally, administrative expenses such as attorney's fees and expenses are paid from the bankruptcy estate's unencumbered assets rather than from secured collateral. *See In re K & L Lakeland, Inc.*, 128 F.3d at 207; *Ford Motor Credit Co. v. Reynolds & Reynolds Co. (In re JKJ Chevrolet, Inc.)*, 26 F.3d 481, 483 (4th Cir. 1994). Section 506(c) of the Bankruptcy Code is an exception to the general rule. It allows a debtor-in-possession to "recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim." 11 U.S.C. § 506(c).

---

[3]    Comm 2013 also raised the intriguing arguments that: (1) its collateral cannot be surcharged because the Debtor's attorney's fees and expenses are not "actual" expenses, since the liability has only been incurred, not paid; and (2) because the Debtor has objected to Comm 2013's claim, it is not an "allowed secured claim" that can be surcharged under § 506(c).
    Regarding the first point, the United States Bankruptcy Court for the District of Maryland points out in *In re Kent Manor Inn, LLC*, that it is unclear whether the Fourth Circuit adheres to the minority view that an expense must be actually paid before the trustee or debtor-in-possession can seek to surcharge it. No. 16-18048-TJC, 2017 WL 2267241, at *7 n.4 (Bankr. D. Md. May 23, 2017) (citing *Loudoun Leasing Dev. Co. v. Ford Motor Credit Co. (In re K & L Lakeland, Inc.)*, 128 F.3d 203, 210 (4th Cir. 1997)). For instance, the portion of the Fourth Circuit's opinion in *K & L Lakeland* that requires an actual expenditure for approval of a surcharge motion was supported by only one of the three judges sitting on the panel. *Id.* The court in *Kent Manor Inn* also notes that requiring an actual expenditure "would seem to be inconsistent with the Fourth Circuit's stated policy that [b]ankruptcy [c]ourts are given wide latitude in determining the timing of payment of administrative expenses." *Id.* (citing *CIT Commc'n. Fin. Corp. v. Midway Airlines Corp. (In re Midway Airlines Corp.)*, 406 F.3d 229, 242 (4th Cir. 2005)). Regarding the second point, it may well be that a surcharge under § 506(c) cannot proceed in the absence of an allowed claim and thus, since Comm 2013's claim is in dispute then, a surcharge cannot be authorized. However, that would only delay a determination regarding the Debtor's surcharge request. Because the court deems the Debtor's motion presently ripe for denial on other grounds, it is unnecessary to rule upon Comm 2013's first ground or, in effect, delay or defer an ultimate ruling because of its second ground.

[4]    Comm 2013's written objection did not substantively contest the reasonableness of the Fee Application under §§ 330 and 331. However, it sought to reserve its right to object to the requested fees in connection with a final application for compensation.

Section 506(c) is designed to prevent "a windfall to a secured creditor at the expense of the estate." *In re Kent Manor Inn, LLC*, 2017 WL 2267241, at *4 (citing *In re JKJ Chevrolet, Inc.*, 26 F.3d at 483). Depending on the facts of the case, prototypical examples of costs and expenses that may be surcharged can include "appraisal fees, auctioneer fees, advertising costs, moving expenses, storage charges, payroll of employees directly and solely involved with the disposition of the subject property, maintenance and repair costs, and marketing costs." *See* 4 Collier on Bankruptcy ¶ 506.05(4) (Richard Levin & Henry J. Sommer eds., 16th ed. 2018).

To surcharge a secured creditor for an administrative expense, the debtor-in-possession must demonstrate that the expense "(1) was incurred primarily to protect or preserve [the secured creditor's] collateral, (2) provided a direct and quantifiable benefit to [the secured creditor], and (3) was reasonable and necessary." *Id.* (quoting *In re K & L Lakeland, Inc.*, 128 F.3d at 207–08); *see* 4 Collier on Bankruptcy, *supra*, ¶ 506.05. In the context of attorney's fees, those incurred "simply . . . in furtherance of the general goal of reorganization" and which confer no special benefit to the secured creditor cannot be surcharged. *Kivitz v. CIT Group/Sales Finance, Inc.*, 272 B.R. 332, 334 (D. Md. 2000). Additionally, attorney's fees offering a "merely speculative" benefit may not be surcharged against a secured creditor's collateral. *See D & M Land Co., LLC v. Branch Banking & Tr. Co.*, 431 B.R. 133, 137 (E.D.N.C. 2010). "'Necessary' costs are those that are unavoidably incurred by a trustee in the preservation or disposal of the secured property." *In re Ware*, No. 12-30566-KLP, 2014 WL 2508731, at *6 (Bankr. E.D. Va. June 3, 2014). Finally, the reasonableness of the costs sought to be surcharged is determined "by comparing them to the amount of the costs and expenses that would necessarily have been otherwise incurred by the creditor." *Id.* at *7 (citing *Compton Impressions, Ltd. v. Queen City Bank, N.A. (In re Compton Impressions, Ltd.)*, 217 F.3d 1256, 1260 (9th Cir. 2000) ("We measure the necessity and reasonableness of the Debtor's incurred expenses against the benefits obtained for the secured creditor and the amount that the secured creditor would have necessarily incurred through foreclosure and disposal of the property.")). "The debtor-in-possession bears the burden of establishing these elements." *Id.* The court must also "make affirmative findings that the requirements of § 506(c) have been met before authorizing a surcharge." *Id.*

Here, the court finds that Comm 2013's collateral cannot be surcharged because the Debtor's attorney's fees and expenses requested in the Fee Application were not incurred primarily

4

to protect or preserve Comm 2013's collateral, provided no direct and quantifiable benefit to Comm 2013, and were not reasonable or necessary in the § 506(c) context.

First, as in *Kivitz*, Kay Casto's services have been centered upon generally reorganizing the Debtor and have not provided a special benefit to Comm 2013 by protecting or preserving its collateral.  The Debtor argues that Kay Casto's efforts to restore access to the property and rent revenues preserved Comm 2013's collateral by increasing its value.  Notably, however, it was Applied Construction Solutions, Inc., and SLS Land and Energy Development that arguably most directly preserved the collateral by restoring access and providing postpetition financing.  Interestingly, however, the Debtor did not seek to surcharge Comm 2013's collateral for those expenses; but indirectly it effectuated the same result, over Comm 2013's objection, as it successfully obtained a priming lien for the bridge-building entities over Comm 2013's collateral interest in certain rents payable to the Debtor.

Indeed, Kay Casto's representation of the Debtor only indirectly facilitated the bridge reconstruction process, such as by filing motions to obtain court approval for retention and financing; its efforts were not primarily centered on protecting and preserving Comm 2013's interest in the estate.  Rather, the Debtor's focus on rebuilding the bridge was to reestablish its shopping mall real estate operations and remain in control of its destiny while in Chapter 11.  Kay Casto's work promoted those objectives.  Moreover, the court finds it likely that the bridge would have been restored with or without the Debtor's bankruptcy case and Kay Casto's representation in that regard, as will be discussed below.  Finally, Kay Casto's fee application seeks approval of all of its fees for legal services rendered from January 24 to October 31, 2017, including those unrelated in any manner to work regarding the restoration of access to Comm 2013's collateral. Kay Casto cannot plausibly maintain that all its work during that period benefitted Comm 2013. And it is not up to the court to comb through the fee application for a breakdown of specific services that allegedly benefitted Comm 2013.  At bottom, the court cannot approve such an undifferentiated fee allowance.

Second, the court finds that Kay Casto's services have not resulted in a direct and quantifiable benefit to Comm 2013.  In *D & M Land Co., LLC*, the court found that expenses related to negotiations to sell real property of the bankruptcy estate were not a direct and quantifiable benefit to the secured creditor where the sale never closed.  431 B.R. at 137.  Here, the Debtor asserts that Kay Casto's representation has resulted in access being restored to the mall,

5

the property appreciating in value by $6,400,000, and the ongoing income generated by rent from tenants now being paid. The court finds this argument to be tenuous at best. To reiterate, Kay Casto's efforts have focused primarily on generally reorganizing the Debtor. In that regard, the efforts of Debtor's counsel in this case have focused on preserving current ownership, litigating with claimants, and formulating a plan of reorganization, not on augmenting the recovery for Comm 2013 or preserving its collateral. As the court previously noted, the Debtor seeks to surcharge Comm 2013's collateral for *all* fees from January 24 to October 31, 2017. Certainly not all of its work, if any, benefitted Comm 2013. Additionally, there is no indication that the bridge would not have been built and rental income restored but for the Debtor filing bankruptcy and retaining Kay Casto as counsel. For instance, a receivership action was pending at the time the Debtor filed this case. It is likely that the receivership action in the United States District Court for the Southern District of West Virginia would have resulted in the restoration of access to the shopping mall.[5] Comm 2013 has recovered nothing to date in connection with a sale of the Debtor's property or the restructuring of its debt. If anything, the Debtor's bankruptcy filing has put Comm 2013's position at risk. For instance, the Debtor successfully primed Comm 2013's collateral interest in certain rents; Comm 2013 was forced to file a motion for adequate protection after the Debtor unilaterally and without authority notified tenants to remit payment to it instead of the lockbox account controlled by Comm 2013; Comm 2013 is currently defending against the Debtor's objection to its proof of claim, among other actions; and ultimately, Comm 2013 may face a "cramdown" of its claim in conjunction with the Debtor's proposed plan of reorganization.

The court also finds that Kay Casto's fees and expenses were not reasonable and necessary for the preservation of Comm 2013's collateral. The fees are not reasonable because, as noted before, they are undifferentiated and lack proper attribution to the specific work allegedly related to collateral preservation. There is also no indication that Comm 2013's costs and expenses here are less than they would have been in the absence of bankruptcy. As noted above, Comm 2013 has likely incurred a financial detriment, rather than a benefit, as a consequence of the Debtor's bankruptcy filing. Likewise, Kay Casto's services were not necessary to preserve or dispose of

---

[5]     In fact, as part of the receivership proceedings, which preceded and precipitated the Debtor's bankruptcy filing, the receiver had obtained estimates from Applied Construction Solutions, Inc., among others, to rebuild the bridge. Thus, it is not surprising that the Debtor looked to the same entities when it undertook to restore the bridge.

Comm 2013's collateral.  Although access to the property has been restored, there is no evidence that Kay Casto's services or the Debtor filing bankruptcy were the sole reasons the bridge was restored.[6]

Based on the foregoing, the court finds it appropriate to deny the Debtor's request to surcharge Comm 2013's collateral for its attorney's fees and expenses.  The requested fees and expenses were not incurred primarily to protect or preserve Comm 2013's collateral, did not provide Comm 2013 with a direct and quantifiable benefit, and were not reasonable and necessary to preserve or dispose of Comm 2013's collateral.

Although the Debtor's attorney's fees and expenses cannot be surcharged to Comm 2013's collateral, the court will address whether the requested interim fees and expenses are nevertheless reasonable under §§ 330 and 331 of the Bankruptcy Code.  Generally, under § 331, a debtor's attorney employed under § 327 may apply to the court once every 120 days after an order for relief for "compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date as is provided under [§ 330 of the Bankruptcy Code].  After notice and a hearing, the court may allow and disburse to such applicant such compensation or reimbursement."  11 U.S.C. § 331.  Under § 330, after notice to the parties and the United States Trustee and a hearing, the court may award "reasonable compensation for actual, necessary services rendered" and "reimbursement for actual, necessary expenses" to Debtor's counsel who has been approved under § 327.  When assessing the reasonableness of fees,

> the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under [title 11];

---

[6]   The Debtor also argues in its motion to surcharge that because it reestablished access to the property under an executory contract with Emerald Grande, LLC, Emerald Grande is required to pay the Debtor for rebuilding the bridge as an administrative expense.  This argument is part of a separate proceeding and has no connection to whether Comm 2013's collateral should be surcharged for the Debtor's attorney's fees and expenses, and thus is rejected.

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under [title 11].

11 U.S.C. § 330(a)(3). In addition to the factors set forth in § 330(a)(3), the U.S. Court of Appeals for the Fourth Circuit has instructed bankruptcy courts to review fee applications in light of the following twelve factors (the "*Johnson* factors"):

(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between the attorney and client; and (12) attorneys' fees awards in similar cases.

*In re Shafer Bros. Constr. Inc.*, 525 B.R. 607, 615 (Bankr. N.D.W. Va. 2015) (citing *Harman v. Levin*, 772 F.2d 1150, 1151 n.1 (4th Cir. 1985)). "The applicant has the burden of demonstrating that the fees and expenses requested are reasonable," and determining reasonableness "is within the sound discretion of the court." *Id.* "[C]ompensation is not allowed for services that were unnecessarily duplicative, not reasonably likely to benefit the debtor's estate, or unnecessary to the administration of the case." *Id.* (citing 11 U.S.C. § 330(a)(4)(A)). Notably, under § 330(a)(5), the court will reduce the final amount of compensation awarded under § 330 "by the amount of any interim compensation awarded under § 331, and, if the amount of such interim compensation exceeds the amount of compensation awarded under [§ 330], may order the return of the excess to the estate."

Here, the court finds that Kay Casto's requested interim fees and expenses listed in the Fee Application are reasonable under §§ 330 and 331. No party, including Comm 2013 and the Office of the United States Trustee, has substantively objected to the reasonableness of the Debtor's requested fees under §§ 330 and 331. The amount of time spent and rates charged by Kay Casto

are very reasonable for a Chapter 11 case of this nature in this district.  Kay Casto has significant experience in dealing with Chapter 11 bankruptcies.  The case is also fairly complex for a single-asset real estate debtor in West Virginia and, during its course of administration, has given rise to a significant amount of disputed issues resulting in litigation.  As a result, the court finds that the compensation sought is reasonable in light of the factors enumerated in § 330(a)(3) and *Harman*. Notably, however, the court will preserve Comm 2013's right to object to the reasonableness of fees in conjunction with the final fee application.  *See supra* note 2.

### III. CONCLUSION

Based on the foregoing, the court will enter a separate order approving fees on an interim basis and denying the Debtor's Motion to Surcharge Collateral under 11 U.S.C. § 506(c).