Order Entered.

Patrick M. Flatley
United States Bankruptcy Judge

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| In re: ) | |
| ) | |
| TARA RETAIL GROUP, LLC, ) | |
| *dba Tara Hotel Group, LLC*, ) | Case No. 17-bk-57 |
| ) | |
| Debtor. ) | Chapter 11 |
| ) | |

## MEMORANDUM OPINION

Pending before the court is a dispute between Tara Retail Group, LLC (the "Debtor"), and its principal secured lender, Comm 2013-CCRE12 Crossings Mall Road, LLC ("Comm2013"), regarding the amount of Comm2013's proof of claim. Specifically, the parties dispute whether Comm2013 may collect as part of its proof of claim $3,139,776.71, which Comm2013 identifies as a "Prepayment Premium" in a rider appended to its proof of claim.[1]

For the reasons stated herein, the court will sustain that part of the Debtor's objection to Comm2013's proof of claim and disallow the $3,139,776.71 prepayment premium.[2]

---

[1] Notably, in its response to the Debtor's claim objection, Comm2013 identifies the same premium as a "Yield Maintenance Default Premium." According to § 2.4.3 of the Loan Agreement, which governs prepayments after default, the Yield Maintenance Default Premium is but one component of what Comm2013 identifies in its proof of claim as the Prepayment Premium. Based upon the parties' respective legal arguments, however, the court does not perceive a relevant difference in the distinction in that regard and will therefore disregard differences in terminology.

[2] To be clear, the Debtor objects to Comm2013's proof of claim on several bases, including some that are part of an ancillary adversary proceeding. During a telephonic hearing on July 19, 2018, the Debtor and Comm2013 noted this issue as being ripe for disposition while the others required more factual development and discovery. Additionally, the parties indicated a need to resolve this dispute to advance the case toward confirmation. The court therefore analyzes only this discrete issue.

1

## I.  BACKGROUND

The relevant facts are undisputed.  On September 17, 2013, the Debtor borrowed $13,650,000 from UBS Real Estate Securities, Inc. ("UBS").  Ultimately, Comm2013 became the holder of the Note and related instruments by virtue of assignment.  Along with the Note evidencing the Debtor's promise to repay the loan, the Debtor also executed a Loan Agreement governing the loan and a deed of trust pledging its property commonly known as the Crossings Mall as collateral to secure its repayment of the Note.  Per the Loan Agreement, New York law governs the agreement, and the stated maturity is October 6, 2023.  Section 2.4.3 of the Agreement, which is the focus of the parties' dispute, provides the following:

> If, during the continuation of any Event of Default, prepayment . . . is tendered by [the Debtor], . . . [the Debtor] . . . shall pay, in addition to the amount of the Loan to be prepaid, (a) an amount equal to the Yield Maintenance Default Premium, (b) all interest which would have accrued on the amount of the Loan to be prepaid through and including the last day of the Interest Period related to the Monthly Payment Date next occurring following the date of such prepayment . . . , and (c) all other sums due and payable under the Loan Documents.

Loan Agreement, § 2.4.3.  Article 10 of the Agreement governs Defaults.  Section 10.1 specifically provides a list of default events.  Section 10.1(b) states that Comm2013 may declare the Note immediately due and payable upon an event of default notwithstanding any or all other remedies available to it.  Section 10.2 provides for Comm2013's remedies in that regard, and § 10.4 makes clear that Comm2013's rights therein are "cumulative and not exclusive of any other right, power or remedy . . . pursuant to this Agreement or the other Loan Documents."

In June 2016, a flood of historic significance affected the Debtor's property, washing away the only commercially reasonable access thereto.  The Debtor's tenants, and therefore the Debtor, were unable to maintain their respective operations.  On September 2, 2016, Comm2013 sent the Debtor a Notice of Default and Notice of Acceleration.  According to the September 2 communication, all sums due and owing under the Loan Agreement were then immediately payable.  Comm2013 declared the Debtor in default, and instituted a receivership action in the United States District Court for the Southern District of West Virginia on September 28, 2016.  The district court appointed a receiver on December 23, 2016.  The Debtor subsequently filed its bankruptcy case on January 24, 2017, obtained post-petition financing to restore access to the subject property, and proposed a plan of reorganization under which it pays Comm2013 over a period extending beyond the stated maturity date.

## II. ANALYSIS

The Debtor seeks to disallow at least $3,139,776.71 of Comm2013's proof of claim. It asserts that Comm2013 is not entitled to that amount because, among other things, Comm2013's acceleration of the Note changed the maturity date such that any present attempt to repay the debt as part of its reorganization cannot constitute a prepayment. In support of its argument, the Debtor relies upon *In re MPM Silicones, L.L.C.*, 874 F.3d 787 (2nd Cir 2017). In opposition, Comm2013 contends that it is entitled to the premium because prepayment premiums like the one here compensate lenders for the loss of their bargain upon prepayment, that they are enforceable as liquidated damages, and they remain enforceable without regard to acceleration. Notably, Comm2013 recognizes *MPM Silicones* as an affirmation of the general rule under New York law that acceleration negates a prepayment penalty but asserts that the case at hand represents the exception. In support of its argument, it primarily relies upon *In re Energy Future Holdings Corp.*, 842 F.3d 247 (3rd Cir. 2016) (applying New York law).

Generally, a mortgagor in New York may not prepay a note absent specific contractual provisions or a statute providing for the right of prepayment. 1 *Bergman on New York Mortgage Foreclosures* § 1.16[1] (2018). However, "[a]cceleration, by definition, advances the maturity date of the debt so that payment thereafter is not prepayment but instead is payment made after maturity, and logically the option to prepay can no longer be exercised after maturity." *Energy Future Holdings Corp.*, 842 F.3d at 259 (internal quotation omitted). Nonetheless, the parties to a mortgage may include the imposition of a prepayment penalty, or other premium, following acceleration if they clearly state it in their agreement. *Id.*; *see SO/Bluestar, LLC v. Canarsie Hotel Corp.*, 33 A.D.3d 986, 825 N.Y.S.2d 80 (2d Dept. 2006) ("The note contained an express provision providing for the payment of prepayment consideration in the event of acceleration upon default, and such provision is enforceable."). For example, the parties in *Energy Future Holdings* divorced the make-whole premium from other provisions related to the acceleration of the obligation. *Id.* at 256. According to the court, "[a]cceleration here has no bearing on whether and when the make-whole is due." *Id.* at 260. Instead, the premium was due upon voluntary redemption. *Id.* at 256 ("[Section] 6.02 causes the maturity of EFIH's debt to accelerate on its bankruptcy, and § 3.07 causes a make-whole to become due when there is an optional redemption before December 1, 2015."). "Thus, while a premium contingent on 'prepayment' could not take effect after the debt's

maturity, a premium tied to a 'redemption' would be unaffected by acceleration of a debt's maturity." *In re Energy Future Holdings Corp.*, 842 F.3d at 259.

Notably, both *MPM Silicones* and *Energy Future Holdings* involved contractual provisions governing the respective debtors' *redemption*[3] of the creditors' notes.[4] Specifically, the debtor in *MPM* was obligated to the payment of a make-whole premium if it redeemed the subject notes before October 15, 2015. *MPM Silicones*, 874 F.3d at 801. In *Energy Future Holdings*, the debtor owed the make-whole premium if it redeemed certain notes before December 1, 2015. *Energy Future Holdings*, 842 F.3d at 254. Both courts recognized that "redemption" differs from "prepayment" because the former may occur "*at* or before maturity." *See MPM Silicones*, 874 F.3d at 803 and *Energy Future Holdings*, 842 F.3d at 259 (emphasis in originals); *but see Energy Future Holdings*, 842 F.3d at 255 (providing that "redemption" includes both pre- and post-maturity repayments of debt). The court in *MPM* found the debtor's repayment to be neither at or before maturity nor at its option based upon the automatic acceleration of the obligation due to the borrower's bankruptcy filing. *MPM Silicones*, 874 F.3d at 802-03. In *Energy Future Holdings*, the court determined that, despite the acceleration of the debtor's obligations upon the filing of its bankruptcy, the debtor's *election* to enter Chapter 11 and refinance the obligations invoked the repayment of the make-whole premium. *Energy Future Holdings Corp.*, 842 F.3d at 255 (emphasis added). Notably, both the bankruptcy filing and the debtor's refinancing occurred before December 1, 2015. *Id*.

Here, the Debtor asserts that it does not owe Comm2013 the prepayment premium because Comm2013 accelerated the maturity date on its Note and, in fact, acceleration occurred before the Debtor's bankruptcy filing. Despite Comm2013's argument to the contrary, the court agrees with the Debtor. The relevant provisions of its Loan Agreement with the Debtor do not entitle it to the prepayment premium because the Debtor can no longer "prepay" the Note. Specifically, § 2.4.3 of the Agreement refers to the "prepayment of all or any part of the Debt [] tendered by [the Debtor]

---

[3] For instance, paying off the notes in conjunction with refinancing with another lender. Notably, the Debtor here does not propose to pay off its debt to Comm2013 with a lump-sum payment. Rather, its proposed plan of reorganization provides that it will repay its Note to Comm2013 over a period of several years with a balloon payment due after the Note's stated maturity.

[4] Neither party has identified or directed the court's attention to any redemption provisions in Loan Agreement or related documents at issue in this case.

4

. . ." during an event of default.[5]  Additionally, the Agreement does not specifically require the payment of the premium based upon the acceleration of the Note.  Rather, in the court's view, the relevant language contemplates a "prepayment" during an event of default in the absence of an accelerated Note.  This is critical because Comm2013, "[u]pon the occurrence of an Event of Default . . . may . . . take such action, without notice or demand, that [it] deems advisable to protect and enforce its rights against [the Debtor] and in and to the Property, including, without limitation, declaring the Debt to be immediately due and payable . . . ."  Loan Agreement, § 10.1(b).  And "any one or more of the rights, powers, privileges and other remedies available to [Comm2013] . . . may be exercised by [it] . . . whether or not all or any portion of the Debtor shall be declared due and payable."  Loan Agreement, § 10.2(a).  At bottom, accelerating the maturity of the Note upon the Debtor's default was but one independent remedy available to Comm2013 under the Agreement.  It could have sought, for instance, remedies short of declaring the Note immediately due and payable, but it chose to accelerate the maturity date of the Note.  The effect of its election in that regard was to cut off any right it has to a "prepayment" premium.  *See In re Energy Future Holdings Corp.*, 842 F.3d at 260 ("Ordinarily, by electing to accelerate the debtor, a lender forgoes its right to a stream of payments in favor of immediate repayment.").

Moreover, the court is unpersuaded by *Energy Future Holdings* because the facts of that case are significantly different from the case before the court.  Comm2013 has not directed the court to any contractual language that provides for a make-whole premium post-acceleration such as a separate redemption provision that would apply regardless of acceleration as was present in *Energy Future Holdings*.  Thus there is no cause to depart from the general rule that acceleration neuters a make-whole provision and no offense is given to the contractual language for which the parties bargained.  *See Energy Future Holdings Corp.*, 842 F.3d at 257.  Additionally, here the Debtor defaulted prepetition based upon a flood of historic consequence that washed away the only access to its property.  Based upon that default, Comm2013 accelerated the maturity of the Note and instituted a civil action against the Debtor in federal district court.  In an effort to reorganize, the Debtor filed this case, in which it proposes in a Chapter 11 plan to reconstitute its indebtedness

---

[5] Although not central to its analysis, the court also questions whether § 2.4.3 operates at all here based upon the event of default not continuing upon Comm2013's choice to accelerate the Note. *See e.g.*, 1 *Bergman on New York Mortgage Foreclosures* § 2.06 (2018) (noting that under New York law, acceleration means the note is fully matured and the lender need not accept a tender of past performance; the event causing default is no longer "continuing.").

5

to Comm2013. In *Energy Future Holdings*, however, the debtor intentionally defaulted by filing for Chapter 11 relief as part of its plan to refinance the notes at issue in that case in order to take advantage of a better interest rate with another lender. As the court noted, "the Noteholders did not seek immediate payment. [The debtor] voluntarily redeemed the Notes over the Noteholders' objection." *Energy Future Holdings*, 842 F.3d at 260. No such machinations by the debtor in that case are present or attributable to the Debtor in this case. The court thus views that case qualitatively different from the case at bar.

### III. CONCLUSION

Based upon the foregoing, the court finds that Comm2013 is not entitled to the prepayment premium it seeks as part of its proof of claim. The court will therefore enter a separate order partially sustaining the Debtor's objection to Comm2013's proof of claim and disallowing $3,139,776.71 thereof.